IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **OFFICER RANDALL LYONS, *et al.*,** : | |
| : | |
| Plaintiffs, : | Case No. 2:21-cv-0940 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| **CHIEF KIMBERLEY JACOBS, *et al.*,** : | Magistrate Judge Chelsey Vascura |
| : | |
| Defendants. : | |

## OPINION & ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (ECF No. 32) and Plaintiffs' Motion for Partial Summary Judgment (ECF No. 34). For the reasons set forth below, this Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Partial Summary Judgment.

### I. BACKGROUND

#### A. Factual Background

The facts in this case are generally uncontested. Plaintiffs Randall Lyons, Anthony Johnson, and Douglas Jones were employed by the Columbus Division of Police (the "CPD" or the "Division") as police officers at all relevant times. (ECF No. 1 ¶ 8). Defendants are the City of Columbus (the "City"), former CPD Chief Kimberley Jacobs, two unidentified CPD officers, and the following individuals also employed by CPD as police officers: Deputy Chiefs Ron Gray, Ken Kuebler, and Michael Woods; Commanders Mark Lang, Gary Cameron, Jennifer Knight, Robert Meader, Michael Springer, and Mark Gardner; Lieutenants Wade Spears and Joseph Echenrode; and Sergeants Erik Babcock, Dan Weaver, Richard Brooks, Jeff Knight, and Ken Decker. (*Id.* ¶¶ 1–5).

1

At issue in this case is CPD's policy of temporarily assigning officers who are under investigation for alleged misconduct to administrative duty at "580" (a "580 assignment" or "restricted duty") during the pendency of the investigations. (*Id*. ¶ 9). "580" is the site at CPD headquarters where those officers are stationed while they perform their administrative duties. (*Id*.). While Plaintiffs reason that the policy is unproblematic when the 580 assignment is "short-term," Plaintiffs contend that CPD unlawfully uses 580 assignments against certain officers as a punishment. (*Id*. ¶ 11). Moreover, Plaintiffs' claims arise from being subjected to 580 assignments for extended periods of time. (*Id*.).

According to Plaintiffs, rather than using assignment to "580" as a "reasonable, short-term assignment while the CPD undertakes an internal investigation," CPD uses restricted duty as a punishment, subjecting officers to restricted duty "for needless and unjustifiable durations" while denying those officers any "due process prior to imposing such punishment." (*Id*. ¶¶ 11, 14). Plaintiffs claim that they and other CPD officers have been denied "sufficient explanation of the charges against them, the evidence in support, or an opportunity to be heard prior to assignment to 580." (*Id*. ¶ 15).

Plaintiffs retained their same rate of pay and other benefits including accrued time off and health benefits while on restricted duty. (Randall Lyons Deposition, ECF No. 31-1 at 41:10–41:24; Anthony Johnson Deposition, ECF No. 31-2 at 81:6–82:21). But while assigned to 580, an officer is denied, among other things, significant opportunities for overtime and special duty pay. (ECF No. 1 ¶ 13) (Johnson Dep. at 81:11–81:18). Plaintiffs are members of a union that entered into a collective bargaining agreement (the "CBA") with the City. (ECF No. 1 ¶ 37). Because assignment to "580" is "not considered punishment under the agreement," however, it "cannot be grieved through the [CBA] grievance process." (*Id.*). According to Plaintiffs, because the CBA requires

good cause prior to discipline, they have a "constitutionally protected property interest in their continued employment, compensation, and job benefits." (*Id.*). The specific factual circumstances of each Plaintiff are as follows.

1. *Plaintiff Lyons*

Following a conversation with two supervising officers, Plaintiff Lyons was placed on restricted duty on September 3, 2013. (Lyons Dep. at 18:18–19:14, 29:7–29:12). The supervising officers informed Lyons that they were unaware why Lyons was being placed on restricted duty aside from the fact that Chief Jacobs ordered it. (*Id*. at 29:7–29:12). The supervising officers then presented Lyons with a form explaining that he was being placed on restricted duty pending an investigation into his suspected misconduct during a recent off-duty traffic incident. (*Id*. at 30:1–30:24). The investigation into this incident concluded with a two-week suspension handed down by Defendant Chief Jacobs on August 5, 2014. (Lyons Dep. at 48:4–48:20; *Id*., Exh. 7).

Lyons was not returned to regular duty after that investigation because he was placed under a second investigation for another incident on June 2, 2014. (ECF No. 32-6). This time, Lyons had been accused of failing to report properly for duty. (*Id*.). Lyons received notice of his discipline for the second investigation on October 9, 2015—a two-week suspension. (Lyons Dep., Exh. 9). In total, Lyons was on restricted duty for more than two years.

2. *Plaintiff Johnson*

On November 15, 2013, a prosecutor from the Franklin County Prosecutor's Office contacted CPD to report suspected criminal misconduct by Plaintiff Johnson. (ECF No. 32-9). As summarized by Plaintiffs, the allegations concerned "supposed misconduct related to releasing a seized vehicle to a potential confidential informant who was also a relative of Johnson." (ECF No. 34 at 2) (citing Johnson Dep., Exh. 4). Johnson was placed on restricted duty on February 15, 2014,

3

pending CPD's investigation into the matter. (Johnson Dep., Exh. 3). CPD started the inquiry as an administrative investigation but soon launched a criminal investigation given the serious nature of the accusations. (ECF No. 34 at 9) (citing ECF Nos. 32-9, 32-10). CPD paused the administrative investigation pending the outcome of the criminal investigation. (ECF No. 34 at 9–10). The criminal investigation team completed their work on September 3, 2014, and forwarded the results to the Prosecutor's Office. (ECF Nos. 32-12, 32-13). The Prosecutor's Office declined to indict Johnson. (ECF No. 32-13). The administrative investigation was resumed on February 25, 2015, and concluded on April 18, 2015. (ECF No. 32 at 10) (citing Johnson Dep., Exh. I). On October 28, 2015, Chief Jacobs held a hearing concerning Johnson's alleged misconduct for which she then recommended a 240-hour suspension. (Johnson Dep. at 22:13–23:11). At that point, Johnson was restored to his usual assignment. (ECF No. 1 ¶ 24). Ultimately, Johnson's suspension was reduced to 176 hours. (Johnson Dep. at 24:17–25:1). In total, Johnson spent over one-and-a-half years on restricted duty.

### 3. *Plaintiff Jones*

In early February 2014, Plaintiff Jones's supervisor informed Chief Jacobs that Jones admitted to having taken several days off without submitting the appropriate paperwork. (Douglas Jones Deposition, ECF No. 31-3 at 25:15–26:2). On February 3, 2014, Jones was placed on 580 assignment pending the resulting investigation. (*Id.*, Exh. 3). The inquiry into this misconduct began as a criminal investigation. (ECF No. 32 at 11) (citing Jones Dep. at 44–45; *Id.*, Exh. 13). On July 22, 2014, the Prosecutor's Office provided notice that it had declined to prosecute the matter. (ECF No. 32-16). On July 31, 2014, internal affairs investigator Daniel Weaver launched an administrative investigation into Jones's alleged misconduct. (Jones Dep. at 43:21–44:6).

4

On September 23, 2015, Chief Jacobs issued her disciplinary recommendation in Jones's case—the imposition of two concurrent 240-hour suspensions. (Jones Dep., Exh. 9). Jones was restored to his regular assignment in October 2015. (*Id*. at 16:3–16:10). Jones ultimately entered into a settlement agreement in December 2015 to accept a single 240-hour suspension. (*Id*., Exh. 11). In total, Jones was on restricted duty for over one-and-a-half years.

### B.  Procedural Background

The present suit is a refiling of Case No. 2:16-cv-0813 (the "2016 case"), originally filed before this Court on August 24, 2016. (2016 case, ECF No. 1). On March 6, 2020, however, Plaintiffs voluntarily dismissed their case without prejudice. (*Id*., ECF No. 34).

Plaintiffs filed their Complaint in the instant action on March 5, 2021. (ECF No. 1). The lawsuit, naming as Defendants the City of Columbus, CPD, and various individual supervising officers (the "Individual Defendants"), brings procedural due process and First Amendment retaliation claims under 42 U.S.C. § 1983. Only Plaintiffs Lyons and Jones bring the First Amendment retaliation claims. (ECF No. 1 ¶ 55).

On July 7, 2021, Defendants filed a Motion to Dismiss which requested the dismissal of Plaintiffs' First Amendment retaliation claims as well as CPD as a party to this action. (ECF No. 7). This Court dismissed the CPD because it is not *sui juris*, but otherwise denied Defendants' request to dismiss Plaintiffs' First Amendment retaliation claim. (ECF No. 25 at 5, 9).

Defendants submitted their Motion for Summary Judgment on November 22, 2022. (ECF No. 32). For their parts, Plaintiffs filed two Motions for Partial Summary Judgment—one motion for each of Plaintiffs' two claims. (ECF Nos. 34, 35). Plaintiffs' second Motion argued that summary judgment should be granted on their First Amendment retaliation claims on the basis that

5

Defendants had admitted those allegations by failing to file timely an answer denying them. (ECF No. 35).

On the following day, November 29, 2022, Defendants filed their Motion for Leave to File Amended Answer requesting permission to file an amended answer addressing Plaintiffs' First Amendment retaliation claims. (ECF No. 36). In their Motion, Defendants asserted that their failure to submit an answer addressing Plaintiffs' First Amendment retaliation claims resulted from excusable neglect. (*Id*. at 3–4). This Court permitted Defendants to file an amended answer; further, the Court denied without prejudice Plaintiffs' Motion for Summary Judgment on their claims for First Amendment retaliation. (ECF No. 39 at 5). Plaintiffs were instructed to file a properly supported motion for summary judgment on their First Amendment retaliation claims within fourteen days of this Court's December 8, 2022 Order. (*Id*.).

Because Plaintiffs failed to do so, this Court considers only Plaintiffs' first Motion for Summary Judgment addressing their procedural due process claim (ECF No. 34) and Defendants' Motion for Partial Summary Judgment (ECF No. 32). These motions are ripe for this Court's consideration.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for

6

that party." *Id.* at 249. Evidence that is "merely colorable" or "not significantly probative" will not defeat summary judgment. *Id*. at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion, as well as "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

"[This] Court views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Even so, "[t]he mere existence of a scintilla of evidence to support [the nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). As explained by the Sixth Circuit, "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

### III. LAW AND ANALYSIS

Defendants' Motion for Summary Judgment requests the dismissal of both Plaintiffs' claims. For their part, Plaintiffs seek summary judgment on their procedural due process claims. This Court analyzes whether summary judgment is warranted on each of Plaintiffs' claims in turn.

### A. Plaintiffs' First Amendment Retaliation Claim

Defendants first move for summary judgment on Plaintiffs' First Amendment retaliation claims. In their Complaint, Plaintiffs Lyons and Jones allege that Defendants assigned them each to restricted duty in retaliation for comments each had made critical of the CPD. Plaintiff Lyons alleges that his 580 assignment was made in retaliation for an instance in which he vocalized and filed an Equal Employment Opportunity ("EEO") complaint concerning his allegations of racial discrimination against a supervisor as well as several instances in which he protested the CPD's use of "580" as a punishment. (ECF No. 1 ¶¶ 58–60). According to Lyons, Defendant Gray is a close friend of the supervisor whom Lyons accused of racial discrimination; as a result, "Defendant Gray . . . has sought to harm the career and impede the career advancement of Plaintiff Lyons." (*Id*. ¶ 60). Plaintiff Jones alleges that his 580 assignment was made in retaliation for an incident in which Jones spoke out (and had "heated exchanges with Defendant Jacobs") about the perceived mistreatment of a fellow officer as well as Jones's critiques of certain training and operations-related matters implemented by the CPD. (*Id*. ¶¶ 56, 57). According to Plaintiffs Jones and Lyons, their reassignments thus constitute retaliation for speaking out about matters of public concern in violation of the First Amendment. (*Id*. ¶¶ 55, 63–64).

In their Motion, Defendants argue that summary judgment is warranted with respect to both Plaintiffs' First Amendment Claims. Defendants contend that Jones cannot support his First Amendment claim because his complaints to supervisors about CPD policy and the alleged mistreatment of other officers do not constitute protected speech. This is because, Defendants argue, a public employee's complaints to his supervisors are not made in the capacity of a citizen and implicate not matters of public concern but rather internal personnel matters. Defendants argue that Lyons cannot support his First Amendment claim because he cannot show the existence of a

8

causal connection between his purported protected speech and his assignment to restricted duty. Specifically, Defendants argue that the decade that elapsed between the protected activity (his EEO complaint about the use of a racial slur by his supervisor) and the adverse action (assignment to restricted duty) is too great a gap of time to support an inference of causation.

In response, Plaintiffs concede that "the factual record does not support their First Amendment claims." (ECF No. 43 at 11).

The Sixth Circuit advised that "[its] jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013). Because Plaintiffs' concession failed meaningfully to address Defendants' argument that summary judgment is warranted, this Court considers Plaintiffs' First Amendment claims to be abandoned. *See, e.g., Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (determining that the district court properly declined to consider the merits of the plaintiff's Title VII claim because he failed to address it in either his response to the defendant's summary judgment motion or his response to the defendant's reply brief). Defendant's Motion for Summary Judgment is thus **GRANTED** with respect to Plaintiffs' First Amendment retaliation claims.

### B. Plaintiffs' Procedural Due Process Claims

The parties both seek summary judgment on Plaintiffs' procedural due process claims. Plaintiffs' procedural due process claims stem from their assignments to restricted duty, which they claim were used against them as a disciplinary punishment "rather than as a legitimate temporary assignment associated with a legitimate investigation" into their alleged misdeeds. (ECF No. 1 ¶¶ 43–45). Specifically, Plaintiffs allege that Defendants violated their due process rights by depriving Plaintiffs of their constitutionally protected property rights without providing

9

them with notice of the "actual motivation for the discipline," an explanation of the evidence against Plaintiffs, or a meaningful opportunity to be heard (which Plaintiffs insist should have included a right to an appeal of the disciplinary decision). (*Id*. ¶ 46).

### 1. Defendants' arguments

Defendants argue that Plaintiffs' procedural due process claims fail for several reasons: (1) the claims are time-barred; (2) Plaintiffs fail to identify any affirmative action taken by most of the Individual Defendants which would give rise to liability; (3) Plaintiffs fail to establish a protected property interest of which they were allegedly deprived; and (4) even if Defendants violated Plaintiffs' procedural due process rights, they are entitled to qualified immunity.

Defendants first argue that Plaintiffs' claims are time-barred because each Plaintiff's claim accrued as of the date upon which he was assigned to restricted duty. Defendants also contend that most of the Individual Defendants should be dismissed because Plaintiffs failed to present any evidence establishing that they had a role in assigning Plaintiffs to restricted duty or keeping them there. Defendants next reason that Plaintiffs lacked a protected property interest giving rise to their due process claims because they did not have the *right* to work overtime or on special duty assignments. Defendants last claim that, at any rate, the doctrine of qualified immunity protects them from liability because neither Plaintiff's constitutional right not to be reassigned under these facts was clearly established. According to Defendants, no existing case law suggests that the CPD acted unlawfully by reassigning Plaintiffs while investigating accusations of serious misconduct.

### 2. Plaintiffs' arguments

According to Plaintiffs, there is no factual dispute that Chief Jacobs was able to remove Plaintiffs from restricted duty assignment nor that the lengthy reassignments deprived Plaintiffs of

10

their abilities to work overtime and on special duty assignments. Plaintiffs thus contend that summary judgment should be granted on their procedural due process claims.

Plaintiffs contend further that their claims are not time-barred because the applicable statute of limitations only began to run once they knew or should have known that the *duration* of their reassignment exceeded constitutional bounds. Plaintiffs argue that the Individual Defendants should not be dismissed because there remains a factual dispute concerning whether they had the authority to restore Plaintiffs to their regular assignments and thus end Plaintiffs' constitutional deprivations. Regarding the issue of qualified immunity, Plaintiffs contend that the Individual Defendants are not entitled to qualified immunity because the Sixth Circuit's opinion in *Gunasekera v. Irwin*, 551 F.3d 461 (6th Cir. 2009), provides general reasoning sufficient to have placed Defendants on notice that the conduct at issue was unconstitutional. Finally, Plaintiffs claim that their protected property interests in their entitlements to overtime work and special duty assignments were created by the custom and practice of the City and the CPD to permit such assignments for non-restricted officers. Plaintiffs cite generally to their declarations for the proposition that the factual record supports such a finding.

### 3. Court's Analysis

"[I]n a section 1983 due process claim for deprivation of a property interest, a plaintiff first must show a protected property interest, and only after satisfying this first requirement can a plaintiff prevail by showing that such interest was abridged without appropriate process." *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002) (internal quotation marks omitted). The due process clause protects only those purported property interests "to which one has a legitimate claim of entitlement." *Id*. (internal quotation marks omitted). These property interests are not creations of the Fourteenth Amendment but are rather created by independent sources, including state law.

11

*Id*. Thus, to establish his or her right to a supposed property interest, the plaintiff "must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the state to rescind the benefit." *West v. Kentucky Horse Racing Comm'n*, 972 F.3d 881, 890 (6th Cir. 2020) (quoting *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 410 (6th Cir. 2002)) (alteration adopted).

Plaintiffs' due process claims necessarily fail because the record is devoid of any evidence that any Plaintiff's supposed entitlement to working overtime and on special duty assignments was anything beyond a unilateral expectation. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972) (explaining that "[t]o have a property interest in a benefit, a person clearly must have more than . . . a unilateral expectation of it.").

Plaintiffs muddy the waters by shifting their argument to an assertion that CPD or the City recognizes a custom and practice of *permitting* officers to work overtime and special duty assignments when not on restricted duty. But the central question is whether Plaintiffs would necessarily have been *entitled* to the supposed benefits had they not been placed on restricted duty. After all, the law is clear that "a party cannot have a property interest in a discretionary benefit, even if that discretion had never been exercised previously." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 857 (6th Cir. 2012). Here, Plaintiffs do not present any authority demonstrating that they would have been entitled to overtime or special duty work had they not been placed on restricted duty.

Plaintiffs' position that their supposed entitlement was not created by the CBA but by custom and practice misses the point. The point is that there is *no* authority in the record—not *even* the CBA—showing that a written or unwritten understanding existed at CPD or the City "that both confers the benefit[s] and limits the discretion of the state to rescind the benefit[s]." *West*, 972 F.3d

at 890. For their part, Defendants submit a copy of the CBA as evidence that there was *not* a written or unwritten understanding that CPD officers were *entitled* to the benefits at issue.

Even if Plaintiffs demonstrated that non-restricted duty officers are entitled to the benefits at issue, they also fail to make the necessary showing of the existence of an understanding that either the CPD or the City has *limited* discretion to rescind the benefits. This is especially salient given that each Plaintiff's investigation—during which Chief Jacobs placed Plaintiffs on restricted duty—ultimately substantiated the allegations of his wrongdoing. To the contrary, the CBA to which Plaintiffs were subject only undermines their positions of entitlement because it explicitly provides that the benefits are discretionary—even when officers are not on restricted duty. The CBA's position on overtime policy is as follows:

> It shall be the policy of the City to avoid overtime work except when absolutely necessary and on the advance authorization of the appropriate supervisor, except that in an emergency such authorization may be granted subsequently.

(ECF No. 32-2 at 86).

Concerning special duty work, the CBA provides the following:

> The extra duty (Special Duty) office will select all members for special duty work from a list containing the names of members volunteering for such work. Reasonable effort should be made to evenly distribute hours of work insofar as practical among the volunteer members. If an officer refuses special duty work for any reason when duty hours or days off show the officer to be available, the member will be charged for the hours refused as if worked.

(*Id*. at 88–89).

In both instances, CPD and City personnel retain the ability to choose when and to whom the benefits at issue are conferred. Further, the CBA provides that the CPD Chief has the authority to assign officers to restricted duties within the CPD as well as the discretion to determine the restriction to be placed on each member. (*Id*. at 37).

13

All that Plaintiffs offer to counter Defendants' evidence that the benefits at issue are discretionary are the allegations contained in Plaintiffs' own declarations. (ECF No. 43 at 10) (citing only to the Plaintiffs' declarations for the proposition that "[t]he factual record supports a finding that [permitting officers to work overtime and special duty hours] was, indeed, the custom and practice of the Columbus Division of Police."). Each Plaintiff's declaration contains a statement attesting that the common practice within the CPD and the understanding that has developed therein is that "[officers] are entitled to work overtime consistent with [their] job responsibility and entitled to take on special duty work that is available." (ECF Nos. 43-1 ¶ 8, 43-2 ¶ 8, 43-3 ¶ 8). As this Court has previously explained, however, self-serving affidavits are insufficient to create an issue of fact sufficient to survive summary judgment. *Ace Am. Ins. Co. v. Gerling & Assocs., Inc.*, No. 2:19-CV-5627, 2022 WL 4468584, at *2 (S.D. Ohio Sept. 26, 2022) (Marbley, J.).

Although Plaintiffs place heavy reliance on the applicability of *Gunasekara*, this Court finds their reliance unwarranted. The plaintiff in *Gunasekara* was a university professor who alleged, *inter alia*, that his university wrongfully deprived him of his property interest in his Graduate Faculty status by suspending him without the proper notice and meaningful opportunity to be heard. 551 F.3d at 464. There, the Sixth Circuit found that, taking the plaintiff's allegations as true, the university's custom and practice afforded the plaintiff a property interest in his Graduate Faculty status for two reasons: (1) "professors enjoy[ed] Graduate Faculty status so long as they me[]t . . . four criteria," and (2) "the University admitted that . . . Graduate Faculty status . . . has never been revoked or suspended." *Id*. at 467–68. Unlike the plaintiff in *Gunasekara*, Plaintiffs fail to identify any authority or custom providing them a legitimate claim to the benefits at issue. *Id*. at 468.

14

Under these facts, the holding of this Court can be summarized in the same manner employed by a fellow court in this district: "a police officer has no property rights to outside details or overtime earnings if the police department has discretion in approving outside details and overtime." *Barnette v. City of Cincinnati*, No. 1:19-CV-309, 2021 WL 5579889, at *8 (S.D. Ohio Nov. 29, 2021) (citing *O'Donnell v. City of Cleveland*, 838 F.3d 717, 730–31 (6th Cir. 2016)).

This Court thus **GRANTS** Defendants' Motion for Summary Judgment on Plaintiffs' due process claims. Plaintiffs' Motion for Partial Summary Judgment is **DENIED**.

## IV. CONCLUSION

Given the foregoing analysis, Defendants' Motion for Summary Judgment (ECF No. 32) is **GRANTED**, while Plaintiffs' Motion for Partial Summary Judgment (ECF No. 34) is **DENIED**. There being no remaining claims in this matter, Plaintiffs' Complaint (ECF No. 1) is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

                                                    **ALGENON L. MARBLEY**
                                                    **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 28, 2023**